IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID ALLEN FUNDERBURK,      :
                Plaintiff,    :
        v.                    :   Case No. 3:10-cv-200-KRG-KAP
JOHN YOST, WARDEN, F.C.I.     :
LORETTO, et al.,              :
                Defendants    :

## Order, and Report and Recommendation

### Recommendation and Order

Defendants filed a motion for summary judgment, docket no. 21. It should be granted and the matter ended. Plaintiff's subsequent motions to file a second amended complaint, docket no. 48, and for the issuance of summonses, docket no. 52, are denied as inequitable. Defendants were served personally by the Marshal because they did not waive service pursuant to Fed.R.Civ.P. 4. The costs of service are imposed on defendants: if plaintiff advanced the costs of service as directed, docket no. 14, the defendants shall reimburse plaintiff for the costs. If there is a dispute about the amount or the awardability of costs the parties shall set forth their respective positions within the time for filing objections.

### Report

Plaintiff Funderburk is an inmate at F.C.I. Loretto, serving a 70 month sentence imposed in February 2009 by the United State District Court for the District of Maryland; his projected release date is in September 2013. He is in his early 30s, and his medical history is significant for a gunshot wound to his chest and

right arm in August 2008, for which Funderburk received treatment at the University of Maryland Medical Center. In January 2009, while waiting for sentencing, Funderburk told the probation officer preparing the presentence report that he was on a waiting list for physical therapy. After his sentence Funderburk was confined briefly at USP Canaan, where he was prescribed Doxipine. When Funderburk arrived at Loretto the prison medical staff discontinued the Doxipine as inappropriate and over the next two years have prescribed Elavil, amitriptyline, and a variety of non-steroidal anti-inflammatory drugs for pain relief. Almost from the day of his arrival Funderburk has been seeking a stronger pain reliever than prison medical staff are willing to prescribe for him and referral to an outside specialist in the hope that there is some curative procedure for the gunshot wound. Funderburk believes that the medications that the medical staff will approve for him hurt his stomach. His complaints on this point were tested by he medical staff by checking to see if there were blood in Funderburk's stool; there was not.

Funderburk filed a complaint in July 2010, subsequently amended in December 2010, see Amended Complaint at docket no. 17, Exhibits at docket no. 12, naming nine employees of the Bureau of Prisons, two of whom are Michael Cash, the chief medical officer, and Jeffrey Trimbath, the Health Services Administrator; the other seven are administrative or corrections personnel: former Warden

Yost, current Warden Werlinger, associate warden Kuhn, corrections officers Pinnizotto and Thomas, and supervisory personnel Brandis and Phillips.

Funderburk claims that defendants have violated his constitutional rights in three respects: (1) he has not received adequate care for his gunshot injury; (2) he was denied a transfer to a lower custody level institution, issued a disciplinary citation, and had his medical and legal documents taken, in retaliation for filing grievances; and (3) his access to court and to the Bureau of Prisons' administrative grievance process for the purpose of exhausting his administrative remedies prior to filing suit was interfered with. The defendants filed a motion to dismiss, docket no. 21, brief in support, docket no. 22, that I ordered the parties to treat as a motion for summary judgment, docket no. 31. Funderburk responded with a brief, docket no. 49, and a motion for leave to file a second amended complaint, docket no. 48.

Funderburk's retaliation and interference with access to court claims can be disposed of summarily. Funderburk alleges that when he arrived at Loretto in April 2009, he was eligible for camp placement (desirable because at a lower custody level) either immediately or after fulfilling some programming condition (GED, drug abuse program) but even though he completed all the suggested programs, he still was not transferred. At some point in 2009 or

3

2010, an administrator named Burget suggested that Funderburk might be transferred to camp status at Loretto, but Funderburk does not want that because there are more vocational programs available at other camps. In March 2010, Funderburk sent a request to defendant Werlinger explaining what camps he wanted to be transferred to and why. Once Funderburk understood that Werlinger opposed the transfer, he filed an informal resolution to initiate a grievance against Werlinger. First Amended Complaint at ¶¶47-48.

On May 20, 2010, defendant Pinnizotto called Funderburk and other inmates "fucking grown babies" "crying," First Amended Complaint at ¶49, over Funderburk's complaint about the temporary lack of water in Funderburk's unit of the prison. Funderburk filed an informal grievance over Pinnizotto's verbal abuse that day. Eight days later, on May 28, 2010, Pinnizotto questioned Funderburk about his possession of a spray bottle, and then later that day searched Funderburk's quarters and cited him for having damaged his mattress. When the matter came to a hearing in August 2010, the hearing officer "dropped all charges." Meanwhile, Funderburk attempted to proceed to filing a formal grievance against Pinnizotto, but found that no inmate would help him "because of fear of retaliation," until one helped him complete the form on June 28, 2010.

On June 13, 2010, defendant Thomas seized a copy of the civil complaint Funderburk had prepared and Funderburk's medical records, plus some underwear and a jump rope.

On June 29, 2010, Funderburk filed an informal grievance against Thomas and Pinnizotto, complaining that Pinnizotto and Thomas's actions were retaliation for Funderburk's legal activities. On July 14, 2010, Funderburk filed a formal grievance against these two defendants.

On July 13, 2010, Funderburk filed an informal grievance against defendant Brandis, alleging that Brandis was threatening him over filing the grievance against Thomas and Pinnizotto. Funderburk followed this up with a formal grievance on July 29, 2010. Funderburk believed that defendant Phillips had not responded in a timely fashion to his complaints about Brandis, so on July 27, 2010, Funderburk filed an informal grievance against Phillips.

Funderburk filed his complaint, dated July 22, 2010, in this court on July 29, 2010.

An inmate has no legal right to the existence of a grievance system or access to such a system. Even if Funderburk offered evidence of interference with Funderburk's use of the grievance system, no defendant could thereby violate Funderburk's legal rights, whether the defendants took too long to respond to grievances, did not respond at all, or responded unfavorably.

As far as access to court is concerning, to satisfy one of the elements of the cause of action for interference with access to court there must be evidence showing that some legal right of plaintiff's has been lost, not merely that plaintiff has been inconvenienced. Funderburk alleges that in June 2010, Werlinger, Kuhn, Phillips, Brandis, and Thomas acted together to seize plaintiff's "medical and legal records, and three pairs of boxer shorts." docket no. 49 at 17. This obviously did not impair his access to court: Funderburk had already exhausted the administrative appeal process with respect to the medical care claims, and Funderburk filed the civil complaint in this court in the very next month. Funderburk argues incorrectly that the hindrance caused by defendants is of itself a sufficient basis for a cause of action: because Funderburk does not allege that he has lost any legal claim or defense as a result of any defendants' actions, he fails to state a claim for denial of access to court.

An inmate has no legal right to be housed in any particular institution or (with the exception of Supermax-type facilities) at any particular custody level. Funderburk recognizes that he cannot assert a claim against any defendant for denying him a transfer. Funderburk claims that defendants Werlinger and Kuhn are liable for failing to transfer him because their failure was "retaliation" against him for filing grievances. First Amended Complaint at ¶75. Funderburk's allegations are not evidence.

Funderburk does not go beyond the pleadings to demonstrate there is any material issue of fact that would permit a properly instructed jury to find that defendant Werlinger's transfer decision (or lack thereof), the disciplinary citation he was issued by defendant Pinnizotto, or any other interaction with defendants, was caused by protected activity. Funderburk relies solely on the coincidences that (1) the time period during which Funderburk was exhausting his grievances about his health care was roughly the same time period as his efforts to get transferred to a camp other than FPC Loretto; and (2) Pinnizotto issued Funderburk a disciplinary citation for damaging his mattress on May 28, 2010, about one week after Funderburk filed a grievance alleging that Pinnizotto verbally abused him, plus the allegation that when in July 2010 Funderburk filed a request for informal resolution of his grievance seeking return of the materials, defendant Brandis insulted Funderburk with "obscene words and threats of retaliation[.]" docket no. 49 at 10.

Funderburk says this temporal proximity is enough to make the questions of retaliation jury issues. docket no. 49 at 30. He is wrong. Funderburk has, according to the record, docket no. 22-3 Brief, Exhibit 1b, filed 28 grievances or appeals of grievances since arriving at Loretto; the odds are that virtually every decision made that affects him took place shortly after a grievance or appeal he has filed. More important, making temporal

coincidence alone sufficient evidence of retaliation would be to create as perverse an incentive as it would be easy to gimmick: the first thing a rational inmate would do is file grievances, meritorious or not, solely for the purpose of advancing a viable retaliation claim if he is ever subjected to any adverse decision while in prison[1]. For a retaliation claim to present a genuine issue of fact solely from the proximity of a grievance to the alleged adverse action, there has to be some reason why the alleged retaliator would be motivated to retaliate as a result of the grievance. Funderburk points to no such evidence. Prison officials are sued every day and have grievances filed against them every day. There is no evidence in the record of this case that responding to an inmate grievance is anything more than a minor matter of paperwork. In this case, there is no apparent or suggested reason why any of the defendants would be motivated to hostility by Funderburk's filings. Pinnizotto was by Funderburk's account dismissive of what he believed was the inmates' "crybaby" attitude, and contemptuous of Funderburk's threat to file a grievance ("make sure you spell my name right"). But even if

---

1. As an illustration of this very point, yesterday as I was working on this draft plaintiff's "motion requesting resolution on all pending motions," docket no. 56, came in the mail. Plaintiff alleges that I am biased against him and "manipulating this civil action to cause a dismissal against the plaintiff in this case." Plaintiff can just as easily claim that my Report and Recommendation is "in retaliation" for his filing of the latest motion, but *post hoc ergo propter hoc* is a logical fallacy, not a legal rule.

defendant Pinnizotto felt some fear of or hostility to Funderburk as a result of Funderburk's grievance over this issue, and that was the real reason that Pinnizotto issued the citation, the allegation by Funderburk himself is that nothing came of Pinnizotto's issuance of the disciplinary citation. If Funderburk had been placed in administrative custody for months because a meritless citation had been issued for a retaliatory reason, that might constitute adverse action sufficient to chill protected activity such as the filing of a lawsuit, but Funderburk does not even allege that Pinnizotto's actions caused him any harm.

As for the access to court claim based on alleged interference in navigating the grievance system and the seizure of records, plaintiff again does not even point to a legal injury it caused him. Plaintiff does argue that his failure to exhaust his grievances should not preclude him from bringing suit, but defendants do not assert that plaintiff failed to exhaust his medical care claim, and I do not rely on plaintiff's failure to exhaust his claims as the reason for dismissing them.

The heart of Funderburk's complaint is that the Bureau of Prisons is not doing anything to improve his medical condition. Prison officials are under no obligation to improve an inmate's pre-existing conditions, whether they are serious medical conditions or not. Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Carlson v. Green, 446 U.S. 14, 17-18 (1980), hold that inmates have

a right derived from the Eighth Amendment that prison officials not be deliberately indifferent to their serious medical needs. "Deliberate indifference" is tantamount to knowing disregard of risk that a condition will cause serious harm:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; **the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.**

Farmer v. Brennan, 511 U.S. 825, 837 (1994)(my emphasis). As a preliminary matter, the requirement of actual knowledge means that, in the absence of truly unusual circumstances, corrections personnel in a prison with a normally functioning medical department do not have the requisite subjective state of mind for liability. Even though a warden or other corrections personnel may sit on a utilization committee or have supervisory authority over medical staff, they do not make medical evaluations or medical treatment decisions. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004). Funderburk does not attempt to explain how defendants Yost, Werlinger, and Kuhn would have sufficient knowledge of Funderburk's medical needs to draw the inference that their medical staff was mistreating Funderburk so badly that it was causing Funderburk a substantial risk of serious harm. He simply asserts that he told them so and that is enough. That is incorrect.

Defendants Trimbath and Cash have provided Funderburk's medical records as well as a very help summary chart in their brief in support of the motion for summary judgment, docket no. 22 at 6-16, which summarizes the declaration by defendant Trimbath, docket no. 22-10, Exhibit 2 to the brief, and the medical records at Exhibit 2a-Part 1, docket no. 22-11, through Exhibit 2c, docket no. 22-23. To boil it down, defendants knew from the outset that Funderburk has a serious medical condition, namely the sequelae from the gunshot injury Funderburk sustained in 2008. (There are also other medical complaints Funderburk has such as skin diseases, STDs, and constipation, but they are not relevant to Funderburk's Estelle claim.) Defendants Cash and Trimbath believed and believe that Funderburk's injury is permanent and stable and any pain that it causes Funderburk is manageable with nonsteroidal anti-inflammatory pain relievers. There is nothing in the record that hints that Funderburk is suffering the excruciating pain he alleges. This does not mean that Funderburk is not suffering excruciating pain, but the element Funderburk must present evidence on (and does not) is that defendants know that Funderburk is suffering excruciating pain. Defendants clearly do not believe Funderburk (they note that during the same time he was complaining of serious injury and loss of strength Funderburk was lifting 80lb free weights); if they are wrong it may be a question of

11

malpractice, but medical error is not equivalent to deliberate indifference.

Funderburk openly admits that his theory of liability is based on the syllogism: 1) I told the defendants I needed treatment; 2) they therefore knew I needed treatment; and 3) any failure to provide me with that treatment is therefore deliberately indifferent. See Plaintiff's Brief, docket no. 49 at 44-45. This is a false syllogism because it equates the proposition "defendants knew that I complained that I needed medical care" with the proposition "defendants knew that I needed medical care." No medical care provider, much less a non-medical care provider, is obliged to act solely on a patient's complaint. Funderburk fundamentally misunderstands this because he believes that:

[O]nce plaintiff complained to [defendants] that he was suffering unnecessary pain ... they were [] under the constitutional and statutory duty of ensuring that [Trimbath] provided the plaintiff with timely and adequate treatment for his serious medical needs... [and that Trimbath] thoroughly investigated the plaintiff's medical condition through an appropriate medical evaluation performed by a neurologist and/or orthopedic specialist as recommended by MCR S. Burke ... .

Proposed Second Amended Complaint at ¶45.

Funderburk concludes, at pages 48-50 of his brief in opposition to the motion for summary judgment, docket no. 49:

[T]he fair thing to do is ask the court to provide the plaintiff the opportunity to hire a medical expert to evaluate the plaintiff's medical records, and permit the plaintiff the opportunity to file a certified medical expert opinion regarding the defendant's knowledge of plaintiff's serious medical needs, and the appropriate course of reasonable medical treatment available,

that the defendants should have provided the plaintiff in this case.

* * *

Therefore, instead of embarking the court in games of medical guessings and findings, and push the court to render an appealable medical and legal erroneous judgment, the plaintiff submits that the above mentioned legal solution is the most suitable in this case.

A lawsuit is for the disposition of claims backed by evidence, not a vehicle for determining whether there is evidence in support of any claims. Funderburk offers the logically faulty (affirming the consequent) argument that: 1) if there were evidence of liability a medical expert would find it; therefore 2) if a medical expert were appointed the expert would find evidence of liability. The published precedential opinion in this circuit and elsewhere, not to mention the Advisory Notes to Federal Rule of Evidence 706(a) and (c), make it clear that while the District Court has the power to appoint a neutral expert for the purpose of assisting the court, the court has no power to tilt the scales in favor of one party litigant by appointing an expert witness for a party. See Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir.1987), cert. denied, 485 U.S. 991 (1988); Hannah v. United States, 523 F.3d 597, 600 (5th Cir.2008). Even if the court had the power to do so, this case would not call for it.

Fed.R.Civ.P. 56(a) directs the entry of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." An issue of fact is genuinely disputed if the evidence is such that under the

13

applicable substantive law a reasonable jury might return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). At trial Funderburk would have to provide medical evidence to prove what exactly his condition is and why he is so obviously in need of some specific treatment that defendants' failure to provide it can be considered beyond malpractice into deliberate indifference. At the summary judgment stage Funderburk therefore has to produce expert evidence, or explain why expert evidence is unnecessary. Expert testimony is required unless a "matter ... is so simple ... as to be within the range of ordinary experience and comprehension of even nonprofessional persons." <u>See</u> <u>Brannan v. Lankanau Hospital</u>, 417 A. 2d 196, 201 (Pa.1980), <u>quoting</u> <u>Chandler v. Cook</u>, 265 A.2d 794, 796 (Pa.1970). <u>See</u> <u>also</u> <u>Festa v.</u> <u>Greenberg</u>, 511 A.2d 1371, 1376 (Pa.Super.1986) <u>alloc.</u> <u>denied</u>, 527 A.2d 541 (Pa.1987) (expert testimony needed in informed consent cases to establish the existence of medical risks about which the average juror has no knowledge); <u>Boring v. Kozakiewicz</u>, 833 F.2d 468, 473 (3d Cir.1987)(expert testimony required to prove that a medical need was serious), <u>cert.</u> <u>denied</u>, 485 U.S. 991 (1988); <u>Toogood v. Rogal</u>, 824 A.2d 1140, 1145 and 1149 (Pa.2003); <u>compare</u> <u>Bushman v. Halm</u>, 798 F.2d 651, 658-59 (3d Cir.1986)(expert testimony not necessary in a motor vehicle collision to prove causation of trauma); <u>see</u> <u>also</u> <u>Geibel v. United States</u>, 667 F. Supp. 215, 219 (W.D.Pa.1987)(discussing lack of expert evidence

submitted to prove claim that dosage decision by physician caused plaintiff harm), aff'd, 845 F.2d 1011 (3d Cir.1988).

The precedents cited in the preceding discussion mostly involve malpractice and not Estelle claims, but the need for expert evidence on medical subjects does not depend on whether the matter is a state law negligence claim or an Eighth Amendment deliberate indifference claim. It should not need emphasizing that an Estelle v. Gamble claim is not a cut-rate negligence claim without the need for expert witnesses. In some simple cases expert testimony would not be needed to prove deliberate indifference but, as Funderburk himself recognizes by his request for an appointed expert, his is not a simple case. What further treatment Funderburk might need, if there is any, is more complicated than, for instance, whether the back pain caused by a 600 pound bale falling on an inmate should be diagnosed by x-ray. That relatively simple omission, said the Supreme Court in Estelle v. Gamble itself, was not deliberate indifference. If this were a malpractice action under the Federal Tort Claims Act, any trial court would require a person with a medical degree to deliver a competent opinion as to the relevant standard of care for Funderburk's condition. Funderburk offers nothing except his *ipse dixit* that he is entitled to more and that it is up to defendants (or the Court) to figure out what it is. Courts are not medical care ombudsmen.

Because plaintiff Funderburk has not demonstrated or attempted to demonstrate by competent testimony that any defendant acted outside normal professional standards, much less knowingly did so with indifference to any condition of Funderburk's, or that Funderburk is suffering any harm as a result, trial would be a meaningless waste of resources with only one outcome.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: _____                    _____

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

David Allen Funderburk, Reg. No. 40205-037
F.C.I. Loretto
P.O. Box 1000
Loretto, PA 15940